OPINION OF THE COURT
O. Peter Sherwood, J.
In December 2007, petitioner, Parbulk II, AS (Parbulk), which is a Norwegian entity, charted the vessel, Mahakam, to respondent, Heritage Maritime, SA (Heritage) (apparently a Singaporean company) pursuant to the terms of a sale/leaseback transaction. Its parent company, Humpuss Intermoda Transportasi TBK (HIT), which is described in an arbitration award as “a substantial Indonesian shipping group,” is the guarantor of the lease. Neither is registered to do business in New York State. HIT’s subsidiary, Humpuss Sea Transport PTE Ltd. (HSTPL), which is a Singaporean firm, is licensed to transact business in New York.
Following the collapse of Lehman Brothers in summer 2008, freight rates declined steeply and Heritage failed to pay hire charges. Parbulk arrested the vessel, terminated the charter and took possession of the ship. A panel of the London Maritime Arbitrators Association awarded over $27,000,000 in damages in favor of Parbulk and against Heritage. In January 2011, Parbulk obtained a judgment against HIT under the guaranty from the UK High Court. It appears that no foreign judgment was entered against HSTPL. Nevertheless, in April 2011, Par-bulk secured a worldwide freezing injunction from the UK High Court against Heritage, HIT and HSTPL (together respondents) based on allegations of asset dissipation by Heritage and HIT. Petitioner alleges that HSTPL is an alter ego of HIT but does not allege how, if at all, it participated in efforts to conceal assets of HIT or Heritage.
In this proceeding, petitioner seeks an order confirming the foreign arbitration award and UK judgment and seeks to attach any property of respondents held in New York. Petitioner also names HSTPL, nine banks and a shipping company as “garnishee-respondents. ’ ’
On May 13, 2011 this court signed an order to show cause with temporary restraining order pursuant to CPLR 6210 enjoining respondents and garnishee-respondents from removing from New York State any property in which respondents have an interest pending a hearing on petitioner’s motion for an order of attachment on respondents’ property “regardless of situs” and for other relief. At the hearing held on May 27, 2011, *189 respondents did not appear. However garnishee-respondents BNP Paribas-New York (BNPP-NY), Bank of New York Mellon (BNY) and PT. Bank Negara Indonesia (Persero) (Bank Negara) appeared and opposed the motion.
Relying on Koehler v Bank of Bermuda Ltd. (12 NY3d 533 [2009]), petitioner argues that it is entitled to attach the assets of respondents held by garnishee-respondent banks who are subject to in personam jurisdiction in New York regardless of the situs of those assets. The banks, led by BNPP-NY, argue (1) that the attachment remedy is limited to assets located within the territorial jurisdiction of New York State; (2) that pursuant to the “separate entity” doctrine, a New York court may not assert jurisdiction over property of a debtor on deposit at a garnishee bank located in New York where the property is held at bank branches outside New York; and (3) that, if the court were to determine that it has authority to issue an attachment of property outside New York, the court should exercise its discretion to deny the petition under the circumstances of this dispute. Bank Negara advances the additional argument that, as a bank which is owned by the government of Indonesia, it is a “foreign state” under the Foreign Sovereign Immunities Act of 1976 (28 USC §§ 1331, 1332, 1391 [f]; § 1441 [d]; §§ 1602-1611) and, therefore, is immune from the jurisdiction of this court.
Discussion
In Koehler, the New York Court of Appeals addressed post-judgment attachment pursuant to CPLR article 52 of property held by third-party garnishees over which courts in New York have personal jurisdiction. The Court held that
“[a] New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee. . . .
“[A] court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225 (b).” (12 NY3d at 541.)
It is worth noting that the Court emphasized that “[w]hile prejudgment attachment [pursuant to CPLR article 62] is typically based on jurisdiction over property, postjudgment enforcement requires only jurisdiction over persons.” (Id. at 537.) Six *190 months later, in Hotel 71 Mezz Lender LLC v Falor (14 NY3d 303, 312 [2010]), the Court held that in the case of a prejudgment attachment pursuant to CPLR article 62 on a garnishee-defendant over which the court has personal jurisdiction, the court has jurisdiction over the individual’s tangible and intangible property, even if the situs of the property is outside New York. The Court also stated the “black letter principle . . . [that] where personal jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction” (id. at 311 [internal quotation marks omitted]). Thus, where the court has personal jurisdiction over the garnishee-defendant, a New York court may order attachment of a debtor’s assets held by the garnishee-defendant even if the situs of the assets is outside New York.
In this case, which involves a postjudgment attachment, despite petitioner’s reliance on CPLR article 62, the garnishee-respondents are found in New York and are subject to personal jurisdiction. Based on Koehler, the court must reject the blanket assertion that even as to garnishee-defendants over which a New York court has personal jurisdiction, the attachment remedy is limited to property located within the territorial boundaries of New York (see Koehler, 12 NY3d at 541).
Neither Koehler nor Hotel 71 addressed the “separate entity” rule which states that “each branch of a bank is a separate entity, in no way concerned with accounts maintained by depositors in other branches or at the home office.” (Cronan v Schilling, 100 NYS2d 474, 476 [Sup Ct, NY County 1950], affd 282 App Div 940 [1st Dept 1953]; Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts, 269 AD2d 101, 101-102 [1st Dept 2000].) The situs of an account is fixed at the branch where the account is carried (see Newtown Jackson Co. v Animashaun, 148 NYS2d 66, 67 [Sup Ct, NY County 1955]; Motorola Credit Corp. v Uzan, 288 F Supp 2d 558, 560 [SD NY 2003]). This is a court-made rule which does not involve any interpretation of either CPLR article 52 or CPLR article 62 (see Clinton Trust Co. v Compania Azucarera Cent. Ramona S.A., 172 Misc 148, 151 [Sup Ct, NY County 1939], affd 258 App Div 780 [1939]; Bluebird Undergarment Corp. v Gomez, 139 Misc 742, 745-746 [1931]). The doctrine has been reaffirmed in court decisions rendered after Koehler in both the prejudgment and postjudgment contexts (see e.g. Samsun Logix Corp. v Bank of China, 31 Misc 3d 1226[A], 2011 NY Slip Op 50861[U] [Sup Ct, NY County, May 12, 2011] [and the cases *191 cited therein]; but see JW Oilfield Equip., LLC v Commerzbank, AG, 764 F Supp 2d 587, 595 [SD NY 2011]).[1]
Each of the banks that has appeared represented that, after a search, it found no property of the respondents in its New York branch.[2] Absent some evidence to support a need for further inquiry, the petition must be dismissed. In view of this determination, the court need not address whether Bank Negara is immune from the jurisdiction of New York courts because it holds no property of respondents at its New York branch office.
Named garnishee-respondents, Bank Permata, Mizuho Corporate Bank, Bank of Tokyo-Mitsubishi UFJ, Ltd., Woori (America) Bank and JP Morgan Chase (nonappearing garnishee banks) as well as Mitsui O.S.K. Lines, Ltd., have not appeared. Presumably, the separate entity rule would apply to the nonappearing garnishee banks. In any event, a search of the court’s e-filing database fails to reveal proof of service of order to show cause on any of these garnishee-respondents. Further, petitioners have not sought relief as to any of these entities.
Accordingly, it is ordered that the motion for issuance of an order of attachment is denied as to Bank of New York Mellon; BNP Paribas-New York; and PT. Bank Negara Indonesia (Persero), the petition is dismissed as to these entities and the proceeding is severed as to them; and it is further ordered that this proceeding shall continue as to the nonappearing garnishee-respondents; and it is further ordered that petitioner shall serve a copy of this decision and order on all remaining garnishee-respondents together with a notice advising that the court will *192 conduct a status conference on Wednesday, July 27, 2011 at 9:30 a.m., in Part 49, Courtroom 252, 60 Centre Street, New York, New York, at which time their appearance is required if they were served with the order to show cause dated May 13, 2011 and specifically, if not severed.

. In declining to apply the separate entity rule, the court in JW Oilfield Equip, stated that “Koehler indicates that New York courts will not apply the separate entity rule in post-judgment execution proceedings” (764 F Supp 2d at 595). This court disagrees. The question certified to the New York Court of Appeals by the United States Court of Appeals for the Second Circuit did not involve the separate entity rule and the New York Court of Appeals did not address it despite the fact that in its amicus curiae brief to that court, the Clearing House Association L.L.C. raised the issue, arguing that the Court should not answer the certified question in a manner that conflicts with the separate entity rule (see Koehler, 12 NY3d at 535 [Points of Counsel]). Until the appellate courts in New York hold otherwise, this court is constrained to decline the invitation to ignore established precedent applying the separate entity rule.

. BNY conducted a worldwide search and found no property held on account of any of the respondents.