RACCOON RECOVERY, LLC, as assignee and successor in interest, Plaintiff,

v.

NAVOI MINING AND METALLURGICAL KOMBINAT, Defendant.

No. 02–M–139.

United States District Court, D. Colorado.

Sept. 18, 2002.

Ernest E. Staggs, Jr., Denver, CO, for plaintiff.

Steven E. Abelman, Cage, Williams, Abelman & Layden, P.C., Denver, CO, Francis A. Vasquez, White & Case, LLP, Washington, DC, for defendant.

## ORDER OF DISMISSAL FOR LACK OF JURISDICTION

MATSCH, District Judge.

This is an Application for Charging Order which was referred to Magistrate Judge Craig B. Shaffer who filed a recommendation on August 14, 2002. The plaintiff Raccoon Recovery, LLC, filed objections to that recommendation on August 26, 2002. The magistrate judge made findings and conclusions based on an extensive record and a full opportunity for the plaintiff to submit support for its contentions. The recommendation is for dismissal for lack of subject matter jurisdiction. The plaintiff in its objections has submitted additional material which was not before the magistrate judge. This court will not consider that material and restricts its review to the record submitted to the magistrate judge. Based on that record, the court adopts the findings of fact and conclusions of law of Magistrate Judge Shaffer and upon that basis, it is

ORDERED that the motion for discovery is denied and the Application for Charging Order is denied and this civil proceeding is dismissed for lack of jurisdiction.

## RECOMMENDATION ON PLAINTIFF'S APPLICATION FOR CHARGING ORDER and REQUEST FOR DISCOVERY

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Plaintiff Raccoon Recovery LLC's ("Raccoon") Citation of Authority, Application for Charging Order, and Request for Discovery, filed on February 12, 2002, and Defendant Navoi Mining and Metallurgical Kombinat's ("Navoi") Opposition to Application for Charging Order, filed May 24, 2002. On February 14, 2002, pursuant to an Order of Reference to Magistrate Judge, this action was referred to Magistrate Judge Boland for a hearing of the evidence and a recommendation for order regarding Raccoon's application for charging order and request for discovery. Following Magistrate Judge Boland's Order of Recusal, dated March 13, 2002, the case was reassigned to Magistrate Judge Shaffer. The court held a hearing on Raccoon's Application and Navoi's Opposition on June 11, 2002. For the following reasons, the court recommends that Raccoon's Application for Charging Order and Request for Discovery be denied.

### FACTUAL BACKGROUND

The following facts are taken from the allegations in Raccoon's Application and attached exhibits which, for the purposes of this motion, will be taken as true. At some time prior to 1994, Nuexco Exchange, AG and Global Nuclear Services and Supply, Ltd. purchased and took delivery of uranium concentrates from Navoi for the benefit of CSI Enterprises, Inc ("CSI"), an entity apparently affiliated with Oren Benton. On or about August 23, 1994, Navoi advised CSI that if it failed to pay the outstanding balance of $1,784,977.80, Navoi would initiate legal proceedings to collect that debt. Although CSI made a partial payment, in October 1994, CSI, Oren Benton and other entities (collectively the "Benton defendants") executed a settlement agreement and confession of judgment in favor of Navoi. As a result of CSI's failure to comply with the payment schedule mandated by the settlement agreement, Navoi filed the confession of judgment in the District Court for the City and County of Denver, in Case Number 94CV6122 (hereinafter "the Denver action"). On December 12, 1994, judgment was entered against the Benton defendants named by Navoi. On December 20, 1994, Navoi received a final payment on behalf of CSI. *See* Exhibit B attached

to Raccoon's Application for Charging Order.

On February 23, 1995, Benton, CSI and other related entities filed cases under Chapter 11 of the United States Bankruptcy Code. *Id.* In conjunction with that bankruptcy, an action for avoidance and recovery of preferential and fraudulent transfers was initiated against Navoi on February 21, 1997, in *Official Joint Creditors' Committee of CSI Enterprises, Inc., et al. v. Navoi Mining and Metallurgical Kombinat,* Adversary Proceeding No. 97–1131–SBB (hereinafter "the Adversary Proceeding"). On June 3, 1997, a judgment, in the amount of $1,794,877.89 was entered against Navoi in the Adversary Proceeding, based upon a finding that Navoi was in default. *See* Exhibit A attached to Raccoon's Application for Charging Order. Raccoon Recovery, LLC is a Colorado limited liability company and an assignee and successor in interest to the judgment against Navoi in the Adversary Proceeding. In June 2001, Raccoon filed in the District Court for the City and County of Denver a Motion for Order Charging Individual Interest of Navoi in an alleged joint venture involving Navoi and Newmont Mining Corporation (hereinafter the "Zarafshan–Newmont joint venture"). Raccoon contends that Navoi and Newmont each hold a 50% interest in Zarafshan–Newmont, which is a heap-leach gold recovery operation in the Republic of Uzbekistan.

On January 23, 2002, Navoi removed the action to the United States District Court pursuant to 28 U.S.C. § 1441. In its notice of removal, Navoi stated that Raccoon failed to effect service upon Navoi in accordance with the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* Navoi further asserted that it is "wholly-owned by the Government of Uzbekistan and an instrumentality of the Government of Uzbekistan ... and there-fore, is entitled to foreign sovereign immunity under the Foreign Sovereign Immunities Act."

## ANALYSIS

On May 28, 2002, Navoi filed its Opposition to Raccoon's Application for Charging Order. Although Navoi filed a brief in "opposition," it seeks to dismiss the action "forthwith under Federal Rule of Civil Procedure 12(h)(3)." In its Opposition, Navoi raises the following arguments: (1) that Navoi is a foreign state entitled to sovereign immunity under the FSIA; (2) that Raccoon failed to comply with the service requirements imposed under 28 U.S.C. § 1608, both in connection with the default judgment entered in the Adversary Proceeding and the Application filed in this action; and (3) that the assets that Raccoon seeks to encumber are immune from attachment under the FSIA.

On July 1, 2002, this court entered an Order in this action. That Order identified the issues raised by Navoi in its Opposition and acknowledged the burden shifting procedure applicable to resolving the immunity issue under the FSIA. *See Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994). This court concluded that Raccoon should be afforded an opportunity to file a supplemental brief responding to the legal arguments raised in Navoi's Opposition and addressing Raccoon's *prima facie* burden under the FSIA. This court also permitted Raccoon to address Navoi's arguments regarding defective service under § 1608 and the subject assets' immunity from attachment.

On July 15, 2002, Raccoon filed a Supplemental Brief in Support of Motion and Application for Charging Order. Having reviewed Raccoon's Application and Navoi's Surreply, and the exhibits attached to the parties' papers, and considered the arguments made by the parties during the

hearing on June 11, 2002, the court concludes that further oral argument would not assist its analysis.

## A. Standard of Review

■ Rule 12(h)(3) provides that the district court shall dismiss a pending action "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Fed.R.Civ.P. 12(h)(3). *See, e.g., St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.) (treating motion raising ripeness issue as motion to dismiss for lack of subject matter jurisdiction), *cert. denied,* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989). *See also Cook v. City of Pomona,* 884 F.Supp. 1457, 1461 (C.D.Cal.), *aff'd,* 70 F.3d 1277, 1995 WL 703711 (9th Cir.1995); *Bradford National Life Insurance Co. v. Union State Bank,* 794 F.Supp. 296, 297 (E.D.Wis.1992). Normally, a district court should first resolve doubts regarding its subject matter jurisdiction before proceeding to the merits of the litigation. *See Ruhrgas AG v. Marathon Oil Company,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). A court lacking jurisdiction must dismiss the litigation at any point in the proceedings in which it becomes apparent that jurisdiction is lacking. *See Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.), *cert. denied,* 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995). *See also Neiberger v. Hawkins,* 150 F.Supp.2d 1118, 1120 (D.Colo.2001) ("a motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)").

■ Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. The determination of subject matter jurisdiction is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Engineers,* 841 F.2d 1011, 1012 (10th Cir.1987). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. Const. Art. III, § 2; *Morris v. City of Hobart,* 39 F.3d 1105, 1110 (10th Cir.1994), *cert. denied,* 514 U.S. 1109, 115 S.Ct. 1960, 131 L.Ed.2d 852 (1995). The court applies a rigorous standard of review when presented with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.,* 815 F.Supp. 1403, 1408 (D.Colo.1992). "[T]he party invoking federal jurisdiction bears the burden of proof." *Marcus v. Kansas Dept. of Revenue,* 170 F.3d 1305, 1309 (10th Cir.1999).

■ "Motions to dismiss pursuant to Rule 12(b)(1) may take two forms." *Amoco Production Co. v. Aspen Group,* 8 F.Supp.2d 1249, 1251 (D.Colo.1998). First, a party may attack the facial sufficiency of the complaint and the court must accept the allegations of the complaint as true. *Id.* Second, a party may attack the factual assertions regarding subject matter jurisdiction through affidavits and other documents and the court "has wide discretion to allow affidavits, other documents and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995). Navoi's Opposition challenges the factual assertions underlying Raccoon's Application for Charging Order.

## B. Raccoon's Prima Facie Burden

■■ Under the FSIA, a federal court lacks subject-matter jurisdiction over a claim against a foreign state, unless a specific statutory exception applies. *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113

S.Ct. 1471, 123 L.Ed.2d 47 (1993).[1] *See also United World Trade, Inc. v. Mangyshlakneft Oil Production Association,* 33 F.3d 1232, 1236 (10th Cir.1994) ("the Foreign Sovereign Immunities Act 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country'") (quoting *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989)), *cert. denied,* 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995). Those exceptions provide, *inter alia,* for subject matter jurisdiction over the foreign state or agency or instrumentality of the foreign state where there has been an express or implied waiver of immunity or

> in any case ... in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*See* 28 U.S.C. § 1605(a)(1) and (2). "A commercial activity may be 'either a regular course of commercial conduct or a particular commercial transaction or act.'" *Saudi Arabia v. Nelson,* 507 U.S. at 356, 113 S.Ct. 1471.

 Navoi argues that as an "agency or instrumentality of a foreign state," it is immune from suit under the FSIA. Navoi bears the initial burden of coming forward with some evidence to establish that it qualifies as a "foreign state" under the

FSIA. *See Mann v. Hanil Bank,* 900 F.Supp. 1077, 1084–85 (E.D.Wis.1995) (noting that under the FSIA, a foreign state is "presumptively immune from the jurisdiction of United States courts"). Once a *prima facie* showing of immunity has been made, the plaintiff seeking to litigate in the district court bears the burden of coming forward with facts showing that an exception applies. *Moran,* 27 F.3d at 172.

In its Supplemental Brief, Raccoon argues that Navoi has not come forward with sufficient evidence to make a *prima facie* showing that it is a foreign state entitled to immunity. This court disagrees. *See Fagot Rodriguez v. Republic of Costa Rica,* 139 F.Supp.2d 173, 186–87 (D.P.R. 2001) ("Under the FSIA, foreign states and their instrumentalities are presumed immune from the jurisdiction of the Courts of the United States unless a specified *187 exception applies") (citing *Saudi Arabia v. Nelson,* 507 U.S. at 355, 113 S.Ct. 1471), *aff'd,* 297 F.3d 1 (1st Cir.2002). Navoi has proffered two declarations by Nickolay Kuchersky, Chairman of the State–Owned Concern for Rare Metals and Gold (the "Kyzylkumredmetzoloto Concern") and Director of Navoi Mining and Metallurgical Kombinat. Navoi also has submitted the 1992 and 1993 Charters of the Navoi Mining and Metallurgical Kombinat, which characterize the company as a "state-owned republican enterprise established on the state-owned property of the Republic of Uzbekistan." Director Kuchersky states that he was appointed in accordance with procedures established by the Cabinet of Ministers of the Republic of Uzbekistan. *See* Declaration of Nickolay

---

1. Under the FSIA, the term "foreign state" includes an "agency or instrumentality of a foreign state," which encompasses an entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state ... or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country. 28 U.S.C. § 1603(b).

Kuchersky at ¶ 7. According to Kuchersky, Navoi is wholly-owned by the Republic of Uzbekistan. *Id.* at ¶ 4. *See also* Supplemental Declaration of Nickolay Kuchersky at ¶¶ 5 and 11. Although originally formed by the Soviet Union in 1958, Navoi was transferred to the jurisdiction and ownership of the Uzbek Government by decree promulgated by the Cabinet of Ministers of the Republic of Uzbekistan in 1992. *Id.* at ¶ 10. Navoi is the only entity in Uzbekistan that controls all aspects of uranium production, storage and exploration in Uzbekistan. *Id.* In light of the declarations and exhibits submitted in support of Navoi's Opposition, the court concludes that Navoi has made a *prima facie* showing that it is an "agency or instrumentality of a foreign state" and governed by the FSIA.

The only exhibit attached to Raccoon's Supplemental Brief is the "Complaint for Avoidance and Recovery of Preferential and Fraudulent Transfers" filed in the Adversary Proceeding, which describes Navoi as "a legal entity organized under the laws of Uzbekistan." That single statement does not contradict the representations made in the Kuchersky declarations. This same exhibit was attached to Raccoon's initial Application for Charging Order. Notably, Raccoon has filed in court proceedings a copy of an interview Director Kuchersky gave on November 17, 2000. In that interview, Mr. Kuchersky states that "from the first days of [Uzbekistan's] independent, our combinat was reformed into a state company . . . of the Republic of Uzbekistan." Other court filings by Raccoon have relied on internet publications prepared by Newmont Mining, which describe Zarafshan–Newmont as a "joint venture between Newmont Gold and two entities of the Republic of Uzbekistan—the State Committee on Geology and Mineral Resources and Navoi Mining and Metallurgical Combinant." The same materials characterize Navoi as a "governmental entity." Raccoon's own exhibits support Navoi's claim of foreign sovereign immunity.

■ Raccoon's Supplemental Brief argues that Navoi is not entitled to foreign sovereign immunity because it was originally created in 1958 as an entity wholly owned by the Soviet Union's Ministry of Medium Machine Building. Raccoon relies on that portion of § 1603(b) which states that "agency or instrumentality of a foreign state" does not include an entity created under the laws of a third country. Raccoon's argument is without merit. Navoi has presented credible evidence showing that in 1992, following the collapse of the Soviet Union and Republic of Uzbekistan's declaration of independence, ownership and control of Navoi passed to the Uzbek Government by decree of the Cabinet of Ministers. At all times relevant to the instant litigation, Navoi was an Uzbek entity created by the Uzbek Cabinet of Ministers under the laws of the Republic of Uzbekistan. *See Gould v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 450 (6th Cir.1988) (holding that for purpose of the FSIA, a foreign entity's status is determined based upon the jurisdictional facts existing at the time the act complained of occurred).

■ Finally, Raccoon challenges Navoi's *prima facie* showing by citing purported errors in the translation of the Kuchersky declarations and the lack of any independent attestation as to the authenticity of documents tendered by Navoi. The court notes that in both of his declarations, Director Kuchersky states that he has knowledge of Navoi's legal status, as well of Navoi's history and structure. Both declarations were made under penalty of perjury. *Compare Perez v. Alcoa Fujikura, Ltd.,* 969 F.Supp. 991, 997 (W.D.Tex.1997) (under Fed.R.Civ.P. 56(e), affidavits must be made on personal knowledge, set forth facts as would be

admissible at evidence, and affirmatively show affiant is competent to testify as to the matters stated therein); *Burnett v. Stagner Hotel Courts, Inc.*, 821 F.Supp. 678, 683 (N.D.Ga.1993) (for purposes of motion under Fed.R.Civ.P. 56, court may consider document that is authenticated by and attached to affidavit, and affiant must be person through whom the exhibits could be admitted into evidence), *aff'd*, 42 F.3d 645 (11th Cir.1994). Kuchersky also declares, under penalty of perjury, that he has attached "true and correct copies of" business and governmental records relating to Navoi. Translations of the Kuchersky declarations and other attached documents were provided by Alexander Ahmedov, Counsel at the Embassy of the Republic of Uzbekistan. The exhibits and declarations submitted by Navoi are properly before the court and establish Navoi's *prima facie* case. *Cf. Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 847–49 (5th Cir.) (holding that affidavits and exhibits submitted by defendant made *prima facie* showing that entity was organ of foreign state), *cert. denied*, 531 U.S. 979, 121 S.Ct. 426, 148 L.Ed.2d 435 (2000).

Given Navoi's *prima facie* showing of immunity, Raccoon bears the burden of coming forward with facts showing that an exception under the FSIA applies. *See Southway v. Central Bank of Nigeria*, 994 F.Supp. 1299, 1305 (D.Colo.1998) (burden of establishing subject matter jurisdiction falls on the party asserting jurisdiction); *Mendenhall v. Saudi Aramco*, 991 F.Supp. 856, 858 (S.D.Tex.1998) (burden of proof shifts to plaintiff to identify the exceptions to immunity upon which he relies and to present some facts that show such an exception exists). Raccoon argues that the present actions falls within the statutory exceptions for waiver and commercial activity.

Raccoon's Supplemental Brief cites the FSIA's waiver exception which provides that "a foreign state shall not be immune from the jurisdiction of the courts of the United States ... in any case ... in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). In support of its waiver claim, Raccoon argues that Navoi has availed itself of the courts of the State of Colorado by initiating the Denver action and "is realizing immense profits from its joint venture with Newmont and taking advantage of Newmont's knowledge and standing in the United States of America." These facts, even if accepted as true, do not support a claim of implied waiver.

Courts have narrowly construed the waiver exception under the FSIA. *See e.g., Drexel Burnham Lambert Group, Inc. v. Committee of Receivers*, 12 F.3d 317, 325 (2d Cir.1993), *cert. denied*, 511 U.S. 1069, 114 S.Ct. 1644, 1645, 128 L.Ed.2d 365 (1994); *Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir.1993); *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C.Cir.1990); *Frolova v. USSR*, 761 F.2d 370, 377 (7th Cir.1985). Even if the court were inclined to find an implied waiver as to the 1994 litigation initiated against the Benton defendants, a request to extend such a waiver to third parties, as in this case, should be rejected "absent strong evidence of the sovereign's intent." *Cargill*, 991 F.2d at 1017. In this case, Raccoon has not presented any evidence from which the court could find an implied waiver extended to Raccoon. *Cf. Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017–18 (2d Cir.1991) (refusing to find an implied waiver based upon suit brought by foreign sovereign in United States court); *Cabiri v. Government of the Republic of Ghana*, 981 F.Supp. 129, 133–34 (E.D.N.Y. 1997) (finding no implied waiver where

litigation initiated by foreign state involved real dispute that required state court resolution), *rev'd in part on other grounds*, 165 F.3d 193 (2d Cir.1999). This court will also not find an implied waiver merely because Navoi may have had previous business dealings with United States companies. *Compare Mendenhall*, 991 F.Supp. at 858 (foreign state's extensive business dealings in United States do not implicitly waive sovereign immunity).

■■■■■ As an alternative basis for this court's exercise of subject matter jurisdiction, Raccoon invokes FSIA's exceptions for commercial activities. *See* 28 U.S.C. § 1605(a)(2). A foreign state is not immune from the jurisdiction of United States' courts in any case where the pending litigation is *based upon*

> (1) a commercial activity carried on in the United States by the foreign state; or
>
> (2) an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
>
> (3) an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*Id.* Notwithstanding the conclusory statements presented in its Supplemental Brief, Raccoon has not sustained its burden of alleging specific facts that would support the commercial activities exception. Raccoon may only rely on the commercial activity exception if the agency or instrumentality's commercial activity has a "significant nexus" with Raccoon's cause of action. *See Nysa–Ila Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir.1993), *cert. denied*, 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 384 (1994). *See also Santos v. Compagnie Nationale Air France*, 934 F.2d 890, 892–93 (7th Cir.1991) (a claim is "based upon" events

in the United States if those events establish a legal element of the claim); *Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 386–87 (5th Cir.1991) (there must be a material connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign)

Based upon the factual allegations raised in Raccoon's Application, this court concludes that Raccoon has not presented evidence sufficient to overcome Navoi's *prima facie* showing of sovereign immunity or bring this action within a statutory exception. Raccoon argues that "the adversary proceeding from which this judgment arose is based on Navoi's engagement in commercial activity in the United States." However, Raccoon must show a material nexus between Raccoon's action and the commercial activity. *Rodriguez*, 934 F.Supp. at 497. Accepting the truth of Raccoon's allegations, it appears that the performance of Navoi's agreement to supply uranium took place outside the United States. Director Kuchersky has stated Nuexco AG contract to purchase uranium was negotiated through a Soviet entity, Tenex, and that Navoi was not a party to that agreement. *See* Kuchersky Supplemental Declaration at ¶ 14. Navoi claims that its only contact with Nuexco was in connection with Navoi's attempt to collect the debt that Tenex owned to Navoi. *Id.* at ¶ 17. This court will not find a "direct effect" in the United States merely because that contract negotiated between Nuexco and Tenex contemplated a payment presumably originating in the United States. *See United World Trade*, 33 F.3d at 1237–38.

Raccoon's action is not based upon commercial activity carried on in the United States by Navoi, but rather on Navoi's apparent failure to appear and defend an adversary proceeding commenced in the United States. "The only relevant acts for

purposes of jurisdiction under the FSIA are those acts that form the basis of the plaintiff's complaint." *Stena Rederi AB,* 923 F.2d at 387–88. Indeed, the only contact between Navoi and the Joint Creditors' Committee for CSI Enterprises, Inc., or its successor Raccoon, comes through the Adversary Proceeding. That event will not suffice to bring this action within the commercial activity exception under § 1605(a)(2). *See also Arriba Limited v. Petroleos Mexicanos,* 962 F.2d 528, 533 (5th Cir.) ("the commercial activity that provides the jurisdictional nexus with the United States must also be the activity on which the lawsuit is based"), *cert. denied,* 506 U.S. 956, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992).

■ Recognizing the burden-shifting procedure under the FSIA, Raccoon argues that it should be permitted to conduct "limited jurisdictional discovery on Navoi's status." *See, e.g., Southway v. Central Bank of Nigeria,* 198 F.3d 1210, 1218 (10th Cir.1999) (noting in passing that the trial court permitted "limited discovery 'on the questions of agency and whether the Nigerian defendants actually participated in the alleged conduct'"). Elsewhere, Raccoon notes that "no discovery on the issue of Navoi's status as a foreign state has occurred." Notably, Raccoon's original Request for Discovery is far more expansive, seeking "discovery in aid of judgment and execution pursuant to Fed.R.Civ.P. Rule 69 and ... discovery on all issues raised by Navoi's removal of the State Court action."

■ The court has discretion to permit limited discovery with respect to jurisdictional issues and the applicability of an FSIA exception. *See First City v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir. 1998). *See also Moran,* 27 F.3d at 172 (the court has discretion to devise a method for making a determination with regard to the jurisdictional issue). However, the

right to conduct preliminary discovery is not absolute. *See Crist v. Republic of Turkey,* 995 F.Supp. 5, 12–13 (D.D.C.1998) and cases cited therein. The opportunity to conduct discovery also must be consistent with the principles and objective underlying the Act. *See Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir.2000) (under FSIA, foreign sovereign has immunity from trial and the attendant burdens of litigation); *United States v. Moats,* 961 F.2d 1198, 1203 (5th Cir.1992) ("sovereign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pretrial wrangling to trial itself"). *Compare Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (noting that the doctrine of qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation"). "When FSIA immunity has been claimed, unlimited jurisdictional discovery is *not* permitted as a matter of course. Instead, it should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Kelly,* 213 F.3d at 849.

In its Supplemental Brief, Raccoon argues that it should be permitted to conduct discovery on such issues as: (1) does the Kyzylkumredmetzoloto Concern own or hold Navoi shares; (2) what is the nature or status of the Kyzylkumredmetzoloto Concern and under what law was it formed; (3) what is or was the relationship between the company owned by the Soviet Union's Ministry of Medium Machine Building and the present Uzbek entity; and (4) what business form did Navoi have when it obtained a judgment in the Denver action. These areas of inquiry suggest little more than a fishing expedition. None of the desired discovery appears reasonably calculated to elucidate facts bearing on the applicability of a jurisdictional exception under the FSIA. Raccoon also contends that it should be

permitted to conduct discovery into the veracity and authenticity of the exhibits tendered in support of Navoi's Opposition to Application for Charging Order, filed May 24, 2002 and its Surreply to Raccoon's Supplemental Brief, filed on July 25, 2002. While the court has discretion to permit limited discovery, that opportunity does not supplant Raccoon's obligation to state specific facts that would bring this action within a recognized FSIA exception to foreign sovereign immunity. *Cf. Arriba*, 962 F.2d at 537 n. 17.

In view of this court's finding that Raccoon improperly seeks to impose a charging order on assets outside the United States, the discovery requested by Raccoon is irrelevant. *See Phoenix Consulting*, 216 F.3d at 40 (discovery should not be granted at all if defendant raises other non-merits grounds, the resolution of which would impose a lesser burden on defendant) (quoting *In re Papandreou*, 139 F.3d 247, 254–55 (D.C.Cir.1998)). Given the non-jurisdictional defects in Raccoon's Application, it would defeat the protections afforded under FSIA to require Navoi to submit to burdensome and unnecessary discovery. *Cf. Whitehead v. Grand Duchy of Luxembourg*, 1998 WL 957463 * 5 (4th Cir.1998).

### C. Immunity from Attachment

█ Navoi contends that Raccoon's Application for Charging Order must be denied as contrary to the express terms of the FSIA. Raccoon's Application seeks to charge Navoi's purported interest in the Zarafshan–Newmont joint venture. Colorado law provides that upon application by any judgment creditor of a partner, the court which entered the judgment or any other court may charge the interest of the debtor partner with payment of the unsatisfied amount of the judgment with interest thereon. *See* Colo.Rev.Stat. § 7–60–128. *See also First National Bank v.*

*District Court*, 652 P.2d 613, 618 (Colo. 1982) (holding that a charging order is the exclusive mechanism to be used to execute upon a judgment debtor's interest in a partnership). Raccoon "seeks payment of the judgment form (sic) the partnership distributions due and owing to Navoi pursuant to the partnership agreement."

Raccoon has submitted various internet publications by Newmont Mining, which describe the Zarafshan–Newmont mining operation. The heap leach mine is located near the town of Zarafshan, Uzbekistan. It appears that all mining operations are confined to Uzbekistan. Zarafshan–Newmont is a limited liability company organized and registered under the laws of Uzbekistan. *See* Kurchersky Declaration at ¶¶ 9–11. The Kuchersky Declaration states that Zarafshan–Newmont does not do any business in the United States and does not own any property in the United States. *Id.*

█ The FSIA provides that property in the United States of a foreign state, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment by a court of the United States or of a State. 28 U.S.C. § 1610(a). Similarly, any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution upon a judgment. 28 U.S.C. § 1610(b). It is well-established that the FSIA creates specific exceptions to the traditional view that property of foreign states was absolutely immune from attachment. *See Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corporation*, 921 F.Supp. 1113, 1117 (S.D.N.Y.1996). *See also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). By its very terms, the FSIA limits attach-

ment to property of the foreign state or instrumentality located "in the United States." *Id.* at 1118–19. *See also Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1477 (9th Cir.1992) ("section 1610 does not empower United States courts to levy on assets located outside the United States"); *Fidelity Partners, Inc. v. First Trust Company of New York,* 58 F.Supp.2d 52, 53 & n. 2 (S.D.N.Y. 1997).

Raccoon's Application for Charging Order sweeps too broadly and seeks relief that is barred by the plain language of the FSIA. On that basis, the Application must be denied.

## D. *Service of Process*

Finally, Navoi argues that Raccoon's Application for Charging Order should be dismissed based upon Raccoon's failure to comply strictly with the requirements for service of process established in the FSIA. It appears to be undisputed that Raccoon did not satisfy all of the procedural requirements for service of process set forth in 28 U.S.C. § 1608(b). Raccoon argues that these technical omissions are immaterial because Navoi has actual notice of the proceedings and the judgment in the earlier Adversary Proceeding. In support of its position, Raccoon cites decisions holding that the FSIA service requirements are satisfied where substantial compliance has effected actual notice. *See Transamerican S.S. Corp. v. Somali Democratic Republic,* 767 F.2d 998, 1001 (D.C.Cir. 1985). Navoi cites a different line of cases supporting its view that dismissal of the pending litigation is required based upon Raccoon's failure to strictly comply with the FSIA service requirements. *See Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148, 154 (D.C.Cir.1994), *cert. denied,* 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995); *Magnus Elecs., Inc. v. Royal Bank of Canada,* 620 F.Supp. 387, 389 (N.D.Ill.1985); *Jackson v. Peo-*

*ple's Republic of China,* 550 F.Supp. 869, 873 (N.D.Ala.1982).

In view of the court's finding that Raccoon's Application should be denied on other grounds, it is unnecessary to reach the question of service of process.

## E. *Conclusion*

For all of the foregoing reasons, this court recommends denial of Raccoon's Application for Charging Order and dismissal of the instant action as contrary to the FSIA. For the same reasons, the court recommends denial of Raccoon's Request for Discovery.

## Advisement to the Parties

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *In re Griego,* 64 F.3d 580, 583 (10th Cir.1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review by the district court. *See In re Griego,* 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma,* 73 F.3d 1057, 1060 (10th Cir.), *cert. denied,* 519 U.S. 909, 117 S.Ct. 271, 136 L.Ed.2d 194 (1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property Known As 2121 East 30th Street,* 73 F.3d at 1060. Failure to make timely objections to the magistrate judge's proposed findings and recommendations will bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *In re Key Energy Resources, Inc.,* 230 F.3d 1197, 1199–1201 (10th Cir. 2000); *Theede v. United States Department of Labor,* 172 F.3d 1262, 1267–68 (10th Cir.1999); *One Parcel of Real Property Known As 2121 East 30th Street,* 73 F.3d at 1059–60.